Netta Dealva REYNOLDS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–88–00547–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 19, 1989.

Rehearing Denied Nov. 16, 1989.

Discretionary Review Refused
Feb. 28, 1990.

Dick DeGuerin, Patricia M. Barron, De-Guerin & Dickson, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Harris Co., Carol M. Cameron, and Lyn McClellan, Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, MIRABAL and COHEN, JJ.

## OPINION ON MOTION FOR REHEARING

COHEN, Justice.

Our prior opinion, dated June 15, 1989, is withdrawn, rehearing is granted, and the following opinion is substituted. This case requires us to decide whether a twelve-year-old child may consent to a police search of his mother's private bathroom.

After the trial judge denied her motion to suppress evidence, appellant pled no contest to possession of cocaine. The court deferred adjudication, placed appellant on probation for two years, and fined her $1500.

Appellant and her former husband, James Reynolds, were divorced in July 1984. For approximately two years before this offense on August 28, 1987, appellant lived in a rented house with her son and daughter, who were then 12 and 9 years old, respectively.

Appellant went to dinner and left her children home that evening. Appellant told the children not to admit anyone to the home and not to enter her bedroom or bathroom without permission. Nevertheless, her daughter went through the master bedroom to the adjoining bathroom, where she opened a box she found on top of a cabinet. She called her brother, who concluded that the box contained drugs. He called his father, James Reynolds, who lived in Clear Lake. Mr. Reynolds had never resided in appellant's house. Mr.

Reynolds presented three choices to his son: 1) he could confront appellant when she returned; 2) he could call his grandmother (appellant's mother); or 3) he could call the police. The son testified that he and his father "agreed" to call the police, but the son did not want to do it himself. Therefore, Mr. Reynolds called the police, told them his son had found cocaine in the house, and called the son back to tell him the police were coming.

City of Bellaire Officer Kerr was invited in by the children, was led to the bathroom, and was directed to a box on top of a cabinet. Officer Kerr stood on the toilet seat to reach the cabinet top, opened the closed box, and found marihuana and cocaine inside. Officer Kerr took the children to the police station and released them to their father. Appellant later returned home, realized her children were missing, searched for them, and finally notified the police, who came and arrested her.

Appellant contends the trial court erroneously denied her motion to suppress evidence because her rights under the Fourth Amendment to the United States Constitution and under Article 1, § 9 of the Texas Constitution were violated when a police officer entered her home and her private bedroom and bathroom without a warrant, without probable cause, and without her consent. Appellant argues that her twelve-year-old son had no authority to consent to the police officer's entry into her private bedroom and bathroom area. It is undisputed that there was no search warrant, the cocaine was not in plain view, and appellant did not consent to the search.

We note that all warrantless searches are unreasonable unless the State proves that the particular search falls within a recognized exception to the constitutional requirement of a warrant. *Brown v. State*, 481 S.W.2d 106, 109 (Tex.Crim.App. 1972).

■ The State argues that appellant failed to preserve error because she objected to "contraband," rather than cocaine, and because her motion to suppress cited Texas Constitution, Article I, section 10, instead of section 9, which she now cites on

appeal. We reject these arguments. Appellant's complaint was timely, specific, and well understood by the prosecutor and the trial judge. The requirements of Tex.R. App.P. 52(a) and Tex.R.Crim.Evid. 103(a) were met. The complaint on appeal is the same as the objection at trial.

■ The State first argues that there was no search by police; rather, the police simply received evidence obtained by the children, who were private persons. Therefore, the State argues, Texas and federal constitutional protections against unlawful search and seizure do not apply because they protect only against governmental seizures, not against private seizures. *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921).

Officer Kerr testified that he entered the home at the invitation of the children, followed them through the bedroom to the bathroom, stood on the toilet seat to reach the top of the cabinet, took possession of a closed box whose contents were not visible, opened the box, viewed the contents, and concluded that cocaine and marihuana were present. We hold that this action constitutes a search, not simply a passive receipt of evidence from a private person.

This is not a case like *Manos v. State*, 659 S.W.2d 662 (Tex.App.—Houston [14th Dist.] 1983, no pet.), relied upon by the State. In *Manos*, a hotel manager used a passkey to enter a room for which payment was overdue. This entry, characterized as "routine" in the opinion, was apparently allowed by law or by contract because the opinion does not mention any challenge to the manager's authority to enter. Once inside, the manager found an open desk drawer, an open closet door, an open briefcase, and an open black bag containing illegal guns. He called the police, who entered the room with him and seized the guns and other property. This differs from the present case because the drugs were not in plain view, and the children's authority to admit the police is vigorously challenged.

The State next argues that the search was justified because the police had probable cause to believe the son's report of cocaine in the home, and exigent circumstances excused the need for a warrant. The State cites *Diehl v. State*, 698 S.W.2d 712 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd), which upheld a search warrant, based on information from a named 11–year–old child that his mother and stepfather possessed marihuana at their residence.

The officer's affidavit in *Diehl* gave the following reason for believing the information from the 11–year–old informant:

[T]he information given by J—— R—— concerning the growing, cultivation, and harvesting of marihuana was of such a specific and detailed nature that it could only be given by someone who observed it. Said information had been previously given to Terry Hernandez, Principal of Manvel Junior High School and was repeated to affiant by J—— R—— in Terry Hernandez's presence. Affiant has been a juvenile officer for 4 years and in her capacity has had the occasion to interview juveniles on numerous occasions and based upon her experience and information given in the testimony of J—— R—— believes the information is true and correct.

*Diehl*, 698 S.W.2d at 713.

Nothing in this record shows the police had information from appellant's children comparable to that in *Diehl*.

■ But even if the son's report supplied probable cause, we find no evidence of exigent circumstances. The State argues, on appeal for the first time, that there was "a distinct possibility that the curiosity of (the children) would have caused them to try the cocaine and/or marihuana and thereby jeopardize their health and welfare." The State further argues that the children "could easily and quickly have destroyed the contraband during the period of time it would have taken Officer Kerr to obtain a search warrant," and that appellant "could have destroyed the contraband upon her arrival home to learn that the police had been notified."

In the trial court, the State did not argue, much less produce evidence, in sup-

port of these assertions. It now contends that the same child who reported this crime to his father and, through him, to the police would suddenly decide to use the controlled substances or destroy evidence. We find no evidence of exigent circumstances excusing the constitutional requirement of a warrant. "[N]o amount of probable cause can justify a warrantless search where the State has not met its burden of showing exigent circumstances." *Brown*, 481 S.W.2d at 109 n. 2.

■ The State finally argues that no search was necessary because the son could consent to a search of his mother's private bathroom. We disagree.

Appellant had custody of the children, and Mr. Reynolds had visitation rights. Appellant testified, without contradiction, that there had been bitter relations between her and Mr. Reynolds from their divorce until this trial. She stated that he had filed motions to hold her in contempt, to change custody, to change visitation, or to modify the divorce court's orders. She testified that before this offense, he had made numerous threats of a custody battle, and that a custody suit was currently in progress. The son testified that he was unhappy at appellant's home, talked by phone to his father almost daily, and wanted to go live with his father. Evidence showed that Mr. Reynolds had called police to the home for unstated reasons six months before this offense and again approximately four months after the offense. The last time, the police made no arrest upon finding an argument in progress between appellant and her son and determining that the son was "out of line."

Appellant and both children testified that appellant's bedroom and bathroom were considered a private area, "off limits" to the children or their friends without permission, and that she gave the children instructions not to let anyone in while she was gone that evening and did not give the children permission to enter the bedroom or the bathroom. By the time Mr. Reynolds called to tell the son that the police were coming, he and his son had, according to the son, "already agreed" to admit the police, and the father stated his admiration for his son "standing up for what (he) thought was right." The son later testified that the father did not tell him to admit the police, and that it was his idea to do so.

Appellant testified that the offense date was the Friday before school started, that the children had been attending the same schools in Bellaire for four years, that the father enrolled them in Clear Lake schools on Monday when school started, and that appellant regained possession the next day by going to school with a court order. Appellant testified that her son was undergoing psychiatric care and had been doing so "for quite some time."

The question thus becomes: Did a twelve-year-old boy, left at home for three or four hours, unhappy, under psychiatric care, hoping for a change of custody and a new home with his father, acting under the direct guidance of his mother's hostile ex-husband, have authority to waive his mother's constitutional rights?

The State argues:

[I]t comes down to an assumption of the risk.... Appellant assumed the risk that (the children) would permit another to enter the house and master bedroom.... The appellant, in allowing (the children) to use the master bedroom must be taken to have assumed the risk that either (child) would permit someone else to look inside.

The appellant argues that because (the son) was twelve years of age he could not validly consent. The State contends that the appellant, by her actions and omissions, placed such authority to consent on the broad shoulders of her twelve-year-old son....

On this particular date, the appellant permitted her children to remain home alone without any adult supervision while she went and had dinner with a friend. There is no evidence that she even called home to speak with her children and make sure everything was all right.[1] There is no evidence that the children

---

1. There is no evidence that she did not. The issue was not mentioned in the trial court.

even knew the appellant's location or phone number where she could be reached.[2] The appellant left (the son) in charge and he stood as "the man of the house." As such, (the son) had the responsibility for the safety and welfare of both himself and his sister, as well as the safety and security of the house. Had there been any need for action—whether it be a medical emergency, a plumbing problem, an act of God, a fire, an accident, etc.,—(the son) was the responsible person to act and react as the need, if any, arose. On the evening of August 28, 1987, just such an occasion arose.

 Contrary to the State's argument, we find no evidence that the children had joint control over the bedroom or the adjoining bathroom. Every witness, including both children, testified to the contrary. We reject also the State's assertion that by leaving her children for three or four hours, appellant empowered them to surrender her constitutional rights.

The United States Supreme Court has written:

A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.

*United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

No expectation of privacy is more reasonable than that which is given to one's bedroom. From there, one may exclude the whole world, including one's children, and especially the government. This right is not lost by living with children or by dining without them. The right to exclude children from one's bedroom is a right that society is prepared to consider reasonable, and according to the evidence, it is one that appellant demanded.

A child of twelve is generally incapable of waiving his own rights. He is even less fit to surrender those of his mother. Judicial vigilance is especially merited when, as here, the undisputed evidence shows that the son acted under the direct guidance of appellant's hostile ex-husband. "The com-

mon sense of the matter is that the ... parent has not surrendered (her) privacy of place in the (home) to the discretion of the ... child; rather, the (child has) privacy of place there in the discretion of the (parent)." Weinreb, *Generalities of the Fourth Amendment*, 42 U.Chi.L.Rev. 47, 60 (1974). Like courts in most other states that have decided the issue, we conclude that the evidence should have been suppressed. *See generally Annotation, Admissibility of Evidence Discovered in Search of Adult Defendant's Property or Residence Authorized by Defendant's Minor Child—State Cases.* 99 A.L.R.3rd 598 (1980).

Our decision implies no criticism of the children, the father, or the police and certainly, no praise for appellant. We simply acknowledge the right to privacy in the bedroom area of one's own home, and under these facts, we refuse to entrust that precious right to the judgment of a 12-year-old boy.

Appellant's point of error is sustained.

The judgment is reversed, and the cause is remanded to the District Court.

SAM BASS, J., dissents.

SAM BASS, Justice, dissenting.

I respectfully dissent.

Appellant's sole point of error asserts the trial court erroneously denied her motion to suppress the evidence because her rights under U.S. Const. amend. IV and Tex. Const. art 1, sec. 9 were violated upon the police officer's entering her home without probable cause, without a warrant, and without her consent. Appellant contends her 12-year-old son was not authorized to consent to the police officer's entry into her home.

The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials. *Vasquez v. State*, 739 S.W.2d 37 (Tex.Crim.App.1987). The Fourth Amendment gives protection against unlawful searches and seizures,

---

**2.** There is no evidence that they did not. The issue was not mentioned in the trial court.

and its protection applies to governmental, not private, action. *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921). A wrongful search or seizure conducted by a private party does not violate the Fourth Amendment, and such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully. *Id.*

There is no evidence that Officer Kerr: had prior knowledge of the cocaine; had previously received information from Joshua, Claire, or any other person as to the presence of the cocaine; or had any specific knowledge that Joshua or Claire intended to look for cocaine. In the instant case, the police responded to a dispatch call. Joshua described what he had seen in the box and led the officer to the contraband, without the officer's searching for it. The box was surrendered without a search. *See Manos v. State*, 659 S.W.2d 662 (Tex.App.—Houston [14th Dist.] 1983, no pet.); *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984), *cert. denied*, 469 U.S. 971, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984); *Harmon v. State*, 277 Ark. 265, 641 S.W.2d 21 (1982).

Appellant cites cases wherein the police approached the occupier of the premises and instigated the search, in order to find evidence used in the commission of a crime. *See, e.g., Becknell v. State*, 720 S.W.2d 526 (Tex.Crim.App.1986); *May v. State*, 582 S.W.2d 848 (Tex.Crim.App.1979); *Jordan v. State*, 576 S.W.2d 825 (Tex.Crim.App.1978); *Swinney v. State*, 529 S.W.2d 70 (Tex. Crim.App.1975); *Swift v. State*, 509 S.W.2d 586 (Tex.Crim.App.1974). The case at hand does not involve officers who are in search of evidence used in the commission of a crime and are seeking permission from a 12–year–old to search a house. Rather, Joshua wanted the police to respond and directed the police to the cocaine and marijuana. Other than seizing that which was pointed out to them, the police did not conduct any type of search. The police restricted their actions to that which had been brought to their attention. The action taken by the police was based upon information and "evidence" voluntarily given to the police by a 12–year–old boy. There

was no "search or seizure" by the police, just the receipt of "evidence."

Regardless, had there been a search of the wooden box, Officer Kerr had sufficient probable cause to justify it based on the information received from Claire and Joshua. *See Diehl v. State*, 698 S.W.2d 712 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd). The officer, when confronted with the facts at the time, found two minor children at home alone with cocaine, marijuana, a spoon, a straw, and wrapping papers within their home. There then existed the possibility of the two minor children partaking of the narcotics with possible serious injury to them, and even the possibility of death ensuing. It should not be arguable that a warrant was not required under these "exigent" circumstances.

I find that the evidence discovered was not the result of an illegal search and seizure.

I would overrule appellant's point of error and affirm the judgment.