TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-96-00118-CR






Julie Howell, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW OF CALDWELL COUNTY


NO. 23,186, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING







 Appellant Julie Howell entered a plea of nolo contendere to the information charging her
with a Class B misdemeanor offense of possession of marihuana. See Tex. Health & Safety Code Ann.
§ 481.121(a), (b)(1) (West Supp. 1997). In the bench trial, the trial court deferred an adjudication of guilt
and placed appellant on community supervision for 12 months with the requirement that a fine of $600 be
paid.

 Appellant advances three points of error all related to the overruling of her pretrial motion
to suppress evidence. Appellant contends that the trial court abused its discretion in overruling the motion
to suppress the evidence because the evidence was seized (1) under a warrant obtained by "deliberate
falsehood or the reckless disregard of the affiant"; (2) in violation of the criminal trespass law and was
excludable under the Texas exclusionary rule; and (3) in violation of appellant's reasonable expectation of
privacy "without a valid search warrant, exigent circumstances, or consent."

 In a suppression hearing, the trial judge is the trier of fact, the judge of the credibility of the
witnesses and the weight to be given their testimony. Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim.
App. 1991), cert. denied, U.S. , 114 S. Ct. 101 (1993). The trial court may accept or reject any
or all of a witness's testimony or evidence offered. Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim.
App. 1993); Riordan v. State, 905 S.W.2d 765, 769 (Tex. App.--Austin 1995, no pet.). The trial court
resolves all conflicts in the evidence. Hawkins v. State, 853 S.W.2d 598, 600 (Tex. App.--Amarillo
1993, no pet.). In reviewing the trial court's decision, an appellate court does not engage in its own factual
review; it determines only whether the record supports the trial court's finding. Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). An appellate court must view the evidence in the light most
favorable to the trial court's ruling. Upon v. State, 853 S.W.2d 548, 553 (Tex. Crim. App. 1993);
Spillman v. State, 824 S.W.2d 806, 810 (Tex. App.--Austin 1992, pet. ref'd). If the trial court's
findings are supported by the record, an appellate court is not at liberty to disturb the findings absent an
abuse of discretion. Etheridge v. State, 903 S.W.2d 1, 15 (Tex. Crim. App. 1994); Cantu v. State, 817
S.W.2d 74, 77 (Tex. Crim. App. 1991). The trial court is also the initial arbiter of the legal significance
of the facts. See Dubose v. State, 915 S.W.2d 493, 497 (Tex. Crim. App. 1996). And deference is
given to the trial court's ruling on this score, too. See Carter v. State, 915 S.W.2d 501, 504 (Tex. Crim.
App. 1996). On appellate review, the court will normally address only the question of whether the trial
court improperly applied the law to the facts. Romero, 800 S.W.2d at 543; Flores v. State, 895 S.W.2d
435, 400 (Tex. App.--San Antonio 1995, no pet.).

 Where, as here, the record contains the ruling but no findings of fact, the appellate court
must presume the trial court found whatever facts were needed to support its ruling. State v. Johnson, 896
S.W.2d 277, 280 (Tex. App.--Houston [1st Dist.] 1995, no pet.), aff'd, 939 S.W.2d 586 (Tex. Crim.
App. 1996); Carroll v. State, 911 S.W.2d 210, 222 (Tex. App.--Austin 1995, no pet.). Moreover, the
trial court's ruling will be sustained if it can be upheld on any valid theory regardless of whether the State
argued it at trial or on appeal. Lewis v. State, 664 S.W.2d 345, 347 (Tex. Crim. App. 1984); Nored v.
State, 875 S.W.2d 392, 395 (Tex. App.--Dallas 1995, pet. ref'd).

 In her pretrial motion to suppress, appellant sought to suppress all evidence illegally
obtained or seized, alleging that the search of her residence was pursuant to an invalid search warrant
because the underlying affidavit did not establish probable cause. Appellant also asserted that the evidence
had been obtained by unlawful entries into her residence by citizen informants named in the affidavit and
that she had not given her consent to any search or seizure. The motion to suppress did not encompass
any allegation that the search warrant was obtained by deliberate falsehood or reckless disregard of the
truth.

 When a defendant seeks to suppress evidence on the basis of the Fourth Amendment to
the United States Constitution or article I, section nine of the Texas Constitution, as appellant did in the
instant case, the burden of proof is on the defendant, who must produce evidence that defeats the
presumption of proper police conduct and shifts the burden to the prosecution. See Russell v. State, 717
S.W.2d 7, 9 (Tex. Crim. App. 1986); Carroll, 911 S.W.2d at 215. As a movant in a suppression
hearing, a defendant meets his initial burden by establishing that the search and seizure occurred without
a warrant. Russell, 717 S.W.2d at 9. When the validity of a search is challenged and the State produces
a warrant, the defendant must go forward to establish the warrant's invalidity on some ground such as lack
of probable cause. Id. at 9-10; Rumsey v. State, 675 S.W.2d 517, 520 (Tex. Crim. App. 1984).

 In making the determination, the affidavit is interpreted in a commonsense, realistic manner. 
A hypertechnical analysis should be avoided. Gibbs v. State, 819 S.W.2d 821, 830 (Tex. Crim. App.
1991), cert. denied, 502 U.S. 1107 (1992). The magistrate's determination of probable cause is given
great deference by the reviewing court. Illinois v. Gates, 462 U.S. 213, 236 (1983).

 The trial court accorded appellant a hearing on her motion to suppress evidence. Contrary
to recognized procedure and the presumption of proper police conduct, the prosecutor assumed the burden
of going forward on appellant's motion. The State called the three citizen-informants mentioned in the
affidavit and then placed the officer-affiant, Jerry Williams, and Officer David Allison on the witness stand. 
Williams testified as to the investigation and the execution of the warrant during which time seven live
marihuana plants were found in appellant's laundry room. Marihuana roaches and seeds were also
discovered during the search. During the cross-examination of Officer Williams, appellant introduced into
evidence the search warrant and the affidavit, including exhibit A which had been attached to the affidavit
and incorporated therein. (1)

 The introduction of the warrant and affidavit clearly placed the burden on appellant to
establish the invalidity of the warrant. Appellant personally testified and then her counsel recalled Officer
Williams who related that he had made notes during the investigation which were used in the preparation
of the affidavit with the assistance of the district attorney. When counsel sought to introduce these notes,
the State objected, noting that the affidavit was in evidence from which probable cause was to be
determined. In response, appellant's counsel stated that he thought "at this point in the hearing, we have
a legitimate Franks v. Delaware question as to whether there was perhaps some reckless disregard in the
preparation of the affidavit." The State's objection was overruled and the notes were admitted. At the
conclusion of the hearing on October 30, 1995, appellant requested and was granted the opportunity to
present a brief. On December 14, 1995, the trial court entered an order overruling the motion to suppress.

 On February 5, 1996, appellant filed a motion to reconsider the suppression ruling. In part,
the motion made reference to a "material misrepresentation" in the affidavit. It alleged affiant's statements
that Aaron and Amber Slaughter had permission to enter appellant's residence and that Katie Petty told
him she had consent to enter the residence were false. This claim was based on the fact that affiant's notes
and draft affidavit did not contain such statements and affiant had testified that Petty informed him she had
been "told not to go into the laundry room." Appellant acknowledged in the motion Petty had testified that
she had been instructed to go into the laundry room to water the plants on the windowsill.

 After a hearing on February 20, 1996, the reconsideration motion was overruled. If a
record was made of the hearing, it is not before this Court. This was the responsibility of appellant. See
Tex. R. App. P. 50(d).

 In her initial point, appellant contends that the trial court erred in denying the suppression
motion because the evidence was seized under a search obtained by a deliberate falsehood "or the reckless
disregard of the affiant." In determining the validity of a search warrant affidavit, the reviewing court
considers only the information brought to the issuing magistrate's attention. The reviewing court is thus
limited to the four corners of the affidavit. See Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App.
1992), cert. denied, 113 S. Ct. 1285 (1993); Lagrone v. State, 742 S.W.2d 659, 661 (Tex. Crim. App.
1987). Texas courts will not generally look behind the face of the affidavit to determine the validity of the
affidavit and the search warrant based thereon. Ramsey v. State, 579 S.W.2d 920, 922 (Tex. Crim. App.
1979); Carroll, 911 S.W.2d at 218. An exception is a proper Franks motion. When a defendant makes
a substantial preliminary showing that a false statement in the search warrant affidavit was made
intentionally, knowingly, or with reckless disregard for the truth, and that the false statement was necessary
to the finding of probable cause, the Fourth Amendment requires a hearing at the defendant's request. 
Franks v. Delaware, 438 U.S. 154, 155-56 (1978); Dancy v. State, 728 S.W.2d 772, 782 (Tex. Crim.
App.), cert. denied, 484 U.S. 975 (1987); Brown v. State, 831 S.W.2d 847, 848 (Tex. App.--Dallas
1992), aff'd, 870 S.W.2d 53 (Tex. Crim. App. 1994). The procedure for invoking Franks has been set
out in Dancy, 728 S.W.2d at 781, and in Ramsey, 579 S.W.2d at 922. (2) The burden is on the defendant
in any evidentiary hearing to show falsity or reckless disregard for the truth by a preponderance of the
evidence. Brown, 831 S.W.2d at 848. If the defendant meets this burden, the false material in the affidavit
will be disregarded. If the affidavit's remaining content is not enough to show probable cause, the search
warrant is voided and the fruits of the search excluded. Dancy, 728 S.W.2d at 780; Brown, 831 S.W.2d
at 848. A misstatement in an affidavit that results from simple negligence or inadvertence as opposed to
reckless disregard for the truth will not render the warrant invalid. Dancy, 728 S.W.2d at 782-83. Such
instances are beyond the pale of Franks. Id. at 782.

 In the instant case, appellant did not follow orderly procedure. Clearly by her motion to
suppress, the overruling of which appellant challenges on appeal, appellant failed to make "a substantial
preliminary showing" of a Franks claim. See Franks, 438 U.S. at 155; Dancy, 728 S.W.2d at 781. 
Absent such a showing as would warrant a Franks hearing, the reviewing court will not look beyond the
four corners of the affidavit. See Brooks v. State, 642 S.W.2d 791, 796-97 (Tex. Crim. App. 1986). 
Even if it can be said that appellant did not learn of a Franks claim until late in the suppression hearing, the
record of the hearing on the reconsideration motion was not brought forward. Tex. R. App. P. 50(d).

 If it can be argued that appellant made her Franks claim and that it is permissible to go
behind the four corners of the affidavit, the record before this Court does not show that false statements
were intentionally or knowingly made by Officer Williams or that there was a reckless disregard of the truth. 
Innocent mistakes or even negligence is not sufficient to support a Franks claim. Mere conflicts between
the investigative notes (including a draft affidavit) and the actual affidavit will not support a Franks claim. 
Probable cause in the affidavit was based (1) on hearsay information received by Officer Williams which
he appropriately accepted, and (2) on Williams's own investigation. He not only talked to the teenage
informants but to their parents and even visited in the Petty home across the street from appellant's
residence. This careful officer took his information to the district attorney before preparing the affidavit to
be presented to the magistrate.

 The testimony showed that the 13 or 14 year-old Amber Slaughter had been employed
by appellant in the Spring of 1994 to feed appellant's cat and water the outside plants during the week days
when appellant was not home. Amber had been in the residence when receiving her instructions or when
she was paid. She was replaced in June 1994 by Katie Petty who testified she had the same duties but also
was instructed to water the plants in the laundry room where the marihuana plants were found. At the
crucial times in question Amber and her brother Aaron went with Katie Perry when she went onto the
premises to perform her duties. Even if it can be argued that the statement in the affidavit that Aaron and
Amber Slaughter had permission and consent to enter appellant's residence was false, it was not shown
to be deliberately false. Even if it was and was stricken from the face of the affidavit, the remaining content
would still reflect probable cause. Appellant challenges a similar statement that Petty had consent to enter
appellant's residence. This statement was not shown to be false. Petty had permission to go onto
appellant's premises to feed the cat and water the outside plants. Petty testified that she never was told
not to take anyone with her, and that her duties also included watering the plants on the windowsill in the
laundry room. Appellant sharply denied that she had authorized Petty to go into the laundry room. 
Williams's notes indicated Petty had told him at one point that she was not to go into the laundry room. 
This contradictory testimony does not in and of itself make the information in the affidavit false. Rather it
raises a fact issue for the trial court to resolve. Washington v. State, 902 S.W.2d 649, 650 (Tex.
App.--Houston [14th Dist.] 1995, pet. ref'd); see also Hawkins, 853 S.W.2d at 600. We do not find
that the trial court abused its discretion in overruling the motion to suppress on the basis of appellant's
Franks claim.

 Next, appellant complains that the trial court erred in overruling the suppression motion
because the evidence was seized in violation of the law of criminal trespass, Tex. Penal Code Ann. § 30.05
(West 1994), and should be excluded. See Tex. Code Crim. Proc. Ann. § 38.23(a) (West 1994). 
Appellant's contention is not an attack upon the search warrant affidavit but an independent claim based
on the Texas exclusionary rule. (3)

 Appellant relies upon the recent decision of Johnson, 939 S.W.2d at 587-88, holding that
the phrase "other person" in article 38.23(a) means any person and is not limited to one who is an agent
of law enforcement. Appellant contends that Aaron and Amber Slaughter and Katie Petty, all teenagers,
violated the law of criminal trespass and thus the evidence was illegally obtained.

 A person commits criminal trespass if (1) without effective consent, (2) he enters or remains
on the property of another, (3) knowingly or intentionally, or recklessly, (4) when he had notice that entry
was forbidden or received notice to depart but failed to do so. Tex. Penal Code Ann. § 30.05 (West
1994); see West v. State, 567 S.W.2d 515, 516 (Tex. Crim. App. 1978); Langston v. State, 812
S.W.2d 406, 408 (Tex. App.--Houston [14th Dist.] 1991), aff'd, 855 S.W.2d 718 (Tex. Crim. App.
1993).

 Not every violation of the provision of any law invokes article 38.23(a), even if timely
raised. See Roy v. State, 608 S.W.2d 645, 651 (Tex. Crim. App. 1980). (4) If it can be said that a violation
of the criminal trespass law by an individual acting in a private capacity invokes article 38.23(a) so that any
evidence "obtained" must be excluded, then the suppression hearing in the instant case must be examined
to determine if the elements of section 30.05 (criminal trespass) were established.

 Without dispute during the crucial times in question Katie Petty had appellant's effective
consent to go on to appellant's premises to feed the cat and to water outside plants. Petty testified that she
was also instructed to go into the laundry room to water other plants on the windowsill. There was
contradictory testimony about Petty's right to go into the laundry room. A fact issue was thus raised for
the trial court who had the right to accept or reject any or all testimony and resolve conflicts. See
Alvarado, 853 S.W.2d at 23. Aaron and Amber Slaughter were with Katie Petty when they were on the
premises during the times in question. Petty testified that appellant did not tell her that no one else could
be with her when she performed her duties. There was no showing that the criminal trespass statute was
violated and that the trial court's ruling was in contravention of article 38.23(a). There was no abuse of
discretion in overruling the suppressed motion on this basis. The point of error is overruled.

 In her third point of error, appellant claims the trial court erred in overruling the suppression
motion because the evidence was seized in violation of her reasonable expectation of privacy "without a
valid search warrant, exigent circumstances or consent." She relies solely upon article I, section 9 of the
Texas Constitution and its statutory counterpart. See Tex. Code Crim. Proc. Ann. art. 1.06 (West 1977). 
The Texas Constitution contains no express guarantee of a right to privacy. Texas State Employees
Union v. Texas Dep't of Mental Health & Mental Retardation, 746 S.W.2d 203, 205 (Tex. 1987);
Dawson v. State, 868 S.W.2d 363, 369 (Tex. App.--Dallas 1993, pet. ref'd). It does contain, however,
several provisions similar to those in the United States Constitution that have been recognized as implicitly
creating protected zones of privacy. Dawson, 868 S.W.2d at 369. Article I, sections 9 and 25 (quartering
soldiers in homes) guarantee the sanctity of the individual's home and person against unreasonable searches
and seizures. Id. Tex. Const. art. I, §§ 9, 25. This is one of the protected zones of privacy.

 The "right of privacy" is actually a generic term encompassing the various rights recognized
to be "inherent in the concept of ordered liberty." Industrial Foundation of the South v. Texas
Industrial Accident Board, 540 S.W.2d 668, 679 (Tex. 1976), cert. denied, 430 U.S. 931 (1977). The
right of privacy is primarily a restraint upon unwarranted governmental interference or intrusion into those
areas deemed to be within the protected zones of privacy. Id. Only personal rights that can be deemed
"fundamental" or "implicit in the concept of ordered liberty" are included in the guarantee or the right of
personal privacy; the right is not absolute and some state regulation in areas protected by the right is
appropriate. 59 Tex. Jur. 3d Privacy, § 2 at 271 (1988) (citing Roe v. Wade, 410 .S. 113, 176, 177
(1973)). The foregoing discussion primarily involved the federal constitutional right of privacy not raised
by appellant, but we see no reason why the same is not applicable to the state constitutional right of privacy
as urged by appellant.

 Statutes prohibiting the possession of marihuana have been held not to infringe on a
defendant's right of privacy. See Gaffney v. State, 575 S.W.2d 537, 541 (Tex. Crim. App. 1978);
Broom v. State, 463 S.W.2d 220, 222 (Tex. Crim. App. 1971); Miller v. State, 458 S.W.2d 680, 684
(Tex. Crim. App. 1970). We have already found that the search warrant was valid and the search and
seizure was reasonable under the Fourth Amendment and article I, section nine of the Texas Constitution. 
There was no unwarranted interference or intrusion into those areas deemed to be within the protected
zones of privacy.

 Moreover, the contention now raised on appeal was not expressly included in appellant's
motion to suppress evidence upon which the trial court ruled. A motion to suppress is nothing more than
a specialized objection to the admissibility of evidence. Galitz v. State, 617 S.W.2d 949, 952 n.10 (Tex.
Crim. App. 1981). A motion to suppress must meet the requirements of an objection. Mayfield v. State,
800 S.W.2d 932, 935 (Tex. App.--San Antonio 1990, no pet.). In order to preserve a complaint for
appellate review, a party must have presented a timely request, objection, or motion, stating the specific
grounds for the ruling he desired the court to make if the specific grounds are not apparent from the context. 
Tex. R. App. P. 52(a). Still further, the complaint on appeal must comport with the trial objection or
nothing is presented for review. See Fuller v. State, 827 S.W.2d 919, 928 (Tex. Crim. App. 1992);
Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

 Appellant in her brief reiterates her earlier arguments that the "warrant is invalid because
it is based on falsehoods" and there was "a violation of art. 30.05." Appellant cites Reynolds v. State, 781
S.W.2d 351 (Tex. App.--Houston [1st Dist.] 1989, pet. ref'd), where there was a warrantless search of
a home. There, it was held that under the circumstances a twelve-year-old boy could not consent to the
search of his mother's bathroom where contraband was found. Here, there was a search warrant and no
question of consent by a third party was involved. Reynolds is distinguishable on its facts, as is State v.
Comeaux, 818 S.W.2d 46 (Tex. Crim. App. 1991), also cited by appellant. Comeaux held that a police
officer's warrantless seizure of a motorist's blood sample from a hospital nurse violated the motorist's
federal and state constitutional rights against unreasonable search and seizure.

 We conclude that since the trial court was not given an opportunity to rule on the
contention, nothing is presented for review. If presented, the contention is without merit. The third point
of error is overruled.


 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Powers, Kidd and Onion*

Affirmed

Filed: May 1, 1997

Do Not Publish























* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. Exhibit A read:


 On the 4th day of October, 1994 I received information from Aaron Slaughter, and
Amber Slaughter that Julie C. Howell (White/Female; DOB: 11-25-44) of Luling, Caldwell
County, Texas was engaged in the indoor growing of marijuana at her residence located at
940 South Pecan, Luling Caldwell County, Texas. The residence is located on the west side
of said street and is described as a single story brick house with off white trim, with an
attached garage with a white door. The residence is currently under the control, care and
custody of Julie C. Howell, according to my knowledge and that of the aforementioned
citizens. Aaron Slaughter and Amber Slaughter told me that they have been inside the
aforementioned residence of Julie C. Howell, on several occasions from prior to and
including the 4th day of October, 1994, and have seen approximately 6 or 7 plants growing
in pots inside the residence, under a growing light. Said witness [sic] believe the plants to
be marijuana plans. Aaron Slaughter and Amber Slaughter found leaves on the floor of the
residence and brought them to me. The leaves had the appearance and odor of growing
marijuana, based upon my training and experience as a certified peace officer, including
numerous cases with marijuana and other controlled substances. Aaron Slaughter and
Amber Slaughter told me that Amber Slaughter had permission and consent from Julie C.
Howell to enter the residence, because Amber Slaughter was requested by Julie C. Howell
to enter the residence on a daily basis to care for the cat of Julie C. Howell. The plants
suspected to be marijuana are growing in the laundry room of the residence, and a long bulb
light has been placed over the growing plants, according to the reports of said witnesses. 
Said witnesses told me that they saw a black covering in place over the outside window of
the room, and that they saw a timer on the growing light therein.


 On the 7th day of October, 1994 and continuing through the 12th day of October, 1994, I
received information from Katie Petty that Julie C. Howell was growing marijuana at the
aforementioned residence. Petty told me that she had permission and consent to enter the
residence from Julie C. Howell, in that Petty was requested by Howell to enter the residence
and feed and care for the cat and outside plants of Julie C. Howell. Petty told me that she
saw the growing plants, approximately 6 or 7 in number, in pots, with a growing light located
above the plants. Petty said that she suspected the plants to be marijuana. Petty took
photographs of the plants during her trips to the house. The photographs were taken by Petty
on the 7th, 8th, 9th, and 10th days of October, 1994 and the 12th day of October, 1994. 
Petty entered the residence on the aforementioned dates and saw the plants growing in the
laundry room as herein described. Petty gave me the photographs and I have them in my
possession. Based upon my training and experience as a peace officer, including marijuana
and controlled substance cases, the plants appearing within the photographs are consistent
with my experience as growing marijuana.


 Petty also stated that she observed inside the residence the following property: cigarette
rolling papers, a smoking pipe; a scale; containers with suspected marijuana seeds; potting
soil; plant containers; packaging materials; and partially smoked cigarettes suspected to
contain marijuana.


 The aforementioned witnesses, same being Aaron Slaughter, Amber Slaughter, and Katie
Petty, are each private citizens whose only contact with my officer regarding these events
occurs in the role of a citizen who has observed suspected criminal activity. None of the
aforementioned witnesses possesses a criminal record, to my knowledge, and each witness
has a good community reputation. The aforementioned witnesses are reliable and credible
citizens.



 The subject residence is located on a dead-end street, namely South Pecan Street, Luling,
Texas, and is the third house from the South end of said street, located on the West side of
said street.
2. In order to be entitled to an evidentiary hearing under Franks on the allegations concerning the
validity of the affidavit, the defendant must:


 1. Allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically
pointing out the portion of the affidavit claimed to be false. Allegations of negligence
or innocent mistake are insufficient, and the allegations must be more than conclusory.


 2. Accompany these allegations with an offer of proof stating the supporting reasons. 
Affidavits or otherwise reliable statements of witnesses should be furnished. If not, the
absence of written support of the allegations must be satisfactorily explained.


 3, Show that when the portion of the affidavit alleged to be false is excised from the affidavit,
the remaining content is insufficient to support issuance of the warrant.


See Franks, 438 U.S. at 171, 172; Ramsey, 579 S.W.2d at 922-23 (emphasis added).
3. Article 38.23(a) provides: "(a) No evidence obtained by an officer or other person in violation
of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the
United States of America, shall be admitted in evidence against the accused on the trial of any criminal
case."
4. Roy held that the violation of the assumed name statute by undercover officers in a "sting"
operation did not require suppression under article 38.23(a) where the purpose of the statute is unrelated
to law enforcement practices. Id. at 651.



 and a long bulb
light has been placed over the growing plants, according to the reports of said witnesses. 
Said witnesses told me that they saw a black covering in place over the outside window of
the room, and that they saw a timer on the growing light therein.


 On the 7th day of October, 1994 and continuing through the 12th day of October, 1994, I
received information from Katie Petty that Julie C. Howell was growing marijuana at the
aforementioned residence. Petty told me that she had permission and consent to enter the
residence from Julie C. Howell, in that Petty was requested by Howell to enter the residence
and feed and care for the cat and outside plants of Julie C. Howell. Petty told me that she
saw the growing plants, approximately 6 or 7 in number, in pots, with a growing light located
above the plants. Petty said that she suspected the plants to be marijuana. Petty took
photographs of the plants during her trips to the house. The photographs were taken by Petty
on the 7th, 8th, 9th, and 10th days of October, 1994 and the 12th day of October, 1994. 
Petty entered the residence on the aforementioned dates and saw the plants growing in the
laundry room as herein described. Petty gave me the photographs and I have them in my
possession. Based upon my training and experience as a peace officer, including marijuana
and controlled substance cases, the plants appearing within the photographs are consistent
with my experience as growing marijuana.


 Petty also stated that she observed inside the residence the following property: cigarette
rolling papers, a smoking pipe; a scale; containers with suspected marijuana seeds; potting
soil; plant containers; packaging materials; and partially smoked cigarettes suspected to
contain marijuana.


 The aforementioned witnesses, same being Aaron Slaughter, Amber Slaughter, and Katie
Petty, are each private citizens whose only contact with my officer regarding these events
occurs in the role of a citizen who has observed suspected criminal activity. None of the
aforementioned witnesses possesses a criminal record, to my knowledge, and each witness
has a good community reputation. The aforementioned witnesses are reliable and credible
citizens.



 The subject residence is located on a dead-end street, namely South Pecan Street, Luling,
Texas, and is the third house from the South end of said street, located on the West side of
said street.
2. In order to be entitled to an evidentiary hearing under Franks on the allegations concerning the
validity of the affidavit, the defendant must:


 1. Allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically
pointing out the portion of the affidavit claimed to be false. Allegations of negligence
or innocent mistake are insufficient, and the allegations must be more than conclusory.


 2. Accompany these allegations with an offer of proof stating the supporting reasons. 
Affidavits or otherwise reliable statements of witnesses should be furnished. If not, the
absence of written support of the allegations must be satisfactorily explained.


 3, Show that when the portion of the affidavit alleged to be false is excised from the affidavit,
the remaining content is insufficient to support issuance of the warrant.


See Franks, 438 U.S. at 171, 172; Ramsey, 579 S.W.2d at 922-23 (emphasis added).
3. Article 38.23(a) provides: "(a) No evidence obtained by an officer or other person in violation
of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the
Unit