**Roosevelt DUNCAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 42748.

Court of Criminal Appeals of Texas.

April 22, 1970.

before he had any customers, a man came in, drew a revolver from his belt, stepped rapidly to the counter and said to Buckel: "Don't reach for that gun or I'll blow your head off." While Buckel proceeded to get the money out of the register, the robber asked him for his billfold. Then the robber insisted there must be more money. The witness further testified that he gave up the money from the cash register and his billfold because he was in fear of life or serious bodily injury. Then under repeated threats of the robber to blow his brains out, he got the keys to the safe and opened it. All told, the robber took $810.00 in checks and money from the store in the robbery.

When the witness Buckel was asked if he saw the person who robbed him present in the courtroom appellant's counsel advised that he had an objection to state and the jury was retired.

Out of the presence of the jury appellant's counsel stated his objection:

"At this time we are objecting to his testimony until it has been established he is testifying from an independent origin. We would like a predicate laid to show he is not testifying from a lineup or from a picture he was shown. We would like at this time prior to making identification here that Mr. Darling go ahead and lay this predicate of this independent origin. We would like to go ahead and cross examine this witness. We would like for the Court to make a determination that he will be testifying from an independent origin. We would like for the Court to make a determination beyond a reasonable doubt as required by the recent holding in Gilbert vs. California and Wade vs. United States."

Being advised by counsel for the state that there had been a lineup held, the court permitted counsel to proffer the evidence in order that he might make rulings on its admissibility before the jury.

In his testimony before the court, the witness Buckel identified appellant as the

Nelson S. Hargrove, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Bill Darling, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is robbery; the punishment, enhanced by a prior conviction for felony theft (Art. 62 P.C.) life.

Two grounds of error are set forth in appellant's brief.

■ The first complains that the court committed reversible error in allowing the in-court identification of appellant by the witness Richard Buckel. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; and Martinez v. State, Tex.Cr.App., 437 S.W.2d 842, are cited.

The indictment alleged the robbery of Richard Buckel. Called as a witness by the state, Mr. Buckel testified that he was an independent operator of a drive-in grocery store in Houston. He opened his store on Sunday, March 17, 1968, about 7 A.M. Some 20 or 25 minutes later, and

person in the courtroom who held a gun on him and robbed him. He further testified that after the robbery he went to the Houston Police Department on three occasions and took part in what is known as a lineup. On the first and second lineups he picked out no one as being the man who robbed him. At the third lineup he did pick out appellant as being the man who robbed him; and further testified:

"Q. I will ask you at this time if you are making this identification you are making here in court from seeing this man at the scene of the robbery on the date it occurred, or are you making it from a lineup you saw, or from a picture you may have seen of this Defendant?

"A. No, sir. It was on that day, that morning, March 17th.

"Q. And you are making this identification from your recollection of seeing this man at the scene and not from any lineup or any pictures, anything of that nature, is that correct?

"A. That's correct, yes, sir."

   *    *    *    *    *    *

"Q. But you, as you told the Court before, you are basing your identification of this Defendant today in court based on your recollection of what you saw at the scene at that time and nothing else, no pictures, no lineup, anything else?

"A. I had an imprint in my mind. I watched him all the time he was there if at another time I wanted to know him. When you are talking about the shape of the nose, width of the eyes and cheekbones, it's hard to describe one person to another."

   *    *    *    *    *    *

"THE COURT: * * * Well, the Court would like to ask the witness one question. How long was the person in your place of business on the morning of the 17th of March, 1968, Mr. Buckel?

"A. (By Witness) I kept him at least longer than it usually happened. About four minutes or five."

Other evidence having been introduced before the court relating to the lineup, the trial court found that there had been no clear and convincing evidence that appellant intelligently and knowingly waived his right to have counsel present at the lineup at which he was identified, and ruled that any testimony concerning Buckel's identification of appellant at such lineup was not admissible and would be excluded.

The court further found that there was clear and convincing evidence that the witness Buckel had ample opportunity to observe the physical features, build and makeup of the defendant at the store on March 17, 1968, as he testified about; that there had been no unduly suggestive procedure used by the officers conducting the lineup on May 9, 1968, which would have been conducive to inducing Richard Buckel to make identification of any particular party or of this defendant:

"* * * and the Court having had an opportunity to observe the demeanor of the witness, Richard Buckel, finds beyond a reasonable doubt that such witness is able to make an in court identification of the Defendant, Roosevelt Duncan, based solely on his observations of said Defendant on the 17th day of March, 1968, as testified to by said witness, and that such testimony of Richard Buckel was free of any improper taint by any procedures utilized at the lineup on or about May 9, 1968, involving this Defendant, and I therefore admit the in court, * * * the testimony of Richard Buckel as to his present identification of this Defendant as being the same person who was in his premises and did the acts he testified to on March 17, 1968."

Appellant objected to "That portion wherein the Court finds that his testimony here today is of an independent origin relating to the Defendant himself, * * *."

The trial before the jury proceeded and the witness Buckel identified and pointed out appellant as the man that robbed him, "No doubt about it."

The procedure followed by the trial court complied with the rule set out in Martinez v. State, supra, and the opinions of the Supreme Court in Wade and Gilbert, supra.

Appellant contends that other than Buckel's testimony there is no evidence to support the court's finding "beyond a reasonable doubt" that his in-court identification was of independent origin, and therefore to allow the in-court identification was error which was harmful to appellant.

We find no abuse of discretion on the part of the trial judge in not precluding the state from offering the in-court identification testimony of the prosecuting witness Buckel.

We note in this regard that appellant was positively identified as the robber by the witness Muncie Rasmus who testified that he saw Mr. Buckel standing in the back of the grocery next to the stockroom and saw appellant holding a pistol in his hand; that appellant told him to get back there with Mr. Buckel, and pushed him into the stockroom and told him to lie flat on the floor with his face down and he did so. When it was shown that the witness Rasmus had not gone to the police station to pick out any person that might have been involved in the robbery and had not seen appellant from the time he was left lying on the floor of the stockroom until he came to court the day before for the trial, the only objection to his testimony identifying appellant as the robber was withdrawn.

Ground of error No. 1 is overruled.

■ The remaining ground of error relates to the testimony of the witness Rasmus being read to the jury from the court reporter's notes, the complaint being that more of the testimony was read back than was necessary to comply with the jury's request. The jury asked the court:

"Where was the alleged robber when Rasmus first saw him? In the hall? In the store-room? In the store?"

The court then instructed the jury that the law provides if the jury disagree as to the statement of any witness, they may, upon application to the court, have read to them from the court reporter's notes that part of the witness' testimony which is in dispute. Upon receipt of the court's instruction, the jury made the following request:

"Please have testimony of Mr. Rasmus read to us in so far as his statement of the robber at the time Mr. Rasmus first saw him."

Appellant's contention is that the following testimony of Mr. Rasmus, set out in his objection, would have answered the jury's question:

"Q. Did you see Mr. Buckel at the U-Tote'm store?

"A. Yes, sir, I saw him.

"Q. Where was he when you saw him?

"A. He was standing in the back against the back door.

"Q. In the back of the Building?

"A. Yes, sir.

"Q. Would this have been out where the goods are located, or back behind that?

"A. No. It was back there next to the stock room.

"Q. Was any other person there with him?

"A. Yes. That gentleman right there."

We are in accord with the state's contention that the limitation which appellant's counsel requested did not so much as iden-

tify appellant as being in the store with a gun in his hand.

Appellant's contention that the ruling of the court permitting the reading of further testimony of the witness Rasmus violated Art. 36.28 Vernon's Ann.C.C.P. is overruled.

The judgment is affirmed.