**Randy Shawn BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–91–00620–CR.**

Court of Appeals of Texas,
Dallas.

April 30, 1992.

Rehearing Denied June 22, 1992.

Douglas H. Parks, Dallas, for appellant.

Karen R. Wise, Dallas, for appellee.

Before BAKER, LAGARDE and KAPLAN, JJ.

## OPINION

BAKER, Justice.

A jury convicted Randy Shawn Brown of murder. The jury assessed punishment at sixty-five years' confinement and a $10,000 fine. Appellant contends the trial court should have granted a mistrial because the probable cause affidavit supporting his arrest warrant was false. He also contends the trial court abused its discretion when it allowed the reading to the jury of a part of a witness's testimony that exceeded the scope of the jury's question about the disputed testimony. We affirm the trial court's judgment.

## THE PROBABLE CAUSE AFFIDAVIT

### 1. Appellant's Contention

In his first point of error, appellant contends the trial court erred in overruling his motion for a mistrial. Appellant argues the probable cause affidavit in support of the arrest warrant was false, making the arrest illegal. Appellant claims the State obtained his voluntary statement as a result of the illegal arrest. He argues the statement was inadmissible. He also argues the statement was so prejudicial that an instruction to disregard would be ineffective.

### 2. The State's Contention

The State initially responds that we cannot review appellant's contention because the affidavit is not in the record. We find the record does contain the affidavit. We can review appellant's point of error. Alternatively, the State argues that the officer did not make the false statement intentionally or with reckless disregard for the truth. The State also argues the statement was not necessary for the finding of probable cause.

### 3. Facts

Dallas Police Officer Charles W. Hudson arrested appellant on a warrant based on a probable cause affidavit. The officer was in charge of investigating the murder of Juniores Ray Mahan. The officer testified he spoke to the witnesses, including Lizzie Williams and her cousin, Latonya Williams. The officer said he based the affidavit on information received from Latonya. One statement says Latonya told the officer that Mike Edwards and Phillip King shot the victims. However, the officer testified it was actually Lizzie who gave him that information. The officer stated he obtained the warrant based on interviews with both Lizzie and Latonya, but only Latonya's name appears on the affidavit.

### 4. Applicable Law

■ To affect the warrant's validity, the false statement in the affidavit must have been either intentional or made with reckless disregard for the truth. The statement must have been necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978); *Dancy v. State*, 728 S.W.2d 772, 782 (Tex.Crim.App.), *cert. denied*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987). The defendant has the burden to show falsity or reckless disregard for the truth by a preponderance of the evidence. If the defendant meets his burden, we disregard the affidavit's false material. If the affidavit's remaining content is not enough to show probable cause, we must void the search warrant. We exclude the fruits of the search as if probable cause were lacking on the affidavit's face. *Franks*, 438 U.S. at 156, 98 S.Ct. at 2676; *Dancy*, 728 S.W.2d at 780. A misstatement in an affidavit that merely results from simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render the warrant invalid. *Dancy*, 728 S.W.2d at 783.

### 5. Application Of The Law To The Facts

■ Appellant claims the probable cause affidavit does not reflect the truth because Lizzie, rather than Latonya, gave the offi-

cer the information he put in the affidavit. Appellant does not claim any other part of the affidavit is incorrect. The officer interviewed both women during the investigation. He testified he based the affidavit on information received from both of them. We find the officer did not intentionally or recklessly include Latonya's name in the affidavit. It was the result of simple negligence or inadvertence for the officer to omit Lizzie's name and include only Latonya's.

Furthermore, when the false material is set aside, the affidavit's remaining content is enough to show probable cause. *See Franks*, 438 U.S. at 156, 98 S.Ct. at 2676; *Dancy*, 728 S.W.2d at 781. Appellant only complains about the name of the person who gave the officer the information, not the actual information concerning the offense. We find that the name of the person who supplied the information was not necessary to the finding of probable cause. *See Dancy*, 728 S.W.2d at 782. Because the arrest warrant was based upon probable cause, we conclude the arrest was legal. The voluntary statement was properly before the court. The trial court did not err in overruling appellant's motion for a mistrial. We overrule appellant's first point of error.

## READING OF WITNESS'S TESTIMONY

### 1. Appellant's Contention

In his second point of error, appellant contends the trial court abused its discretion when it allowed the court reporter to reread a portion of a witness's testimony that exceeded the scope of the jury's question about the disputed testimony. Appellant contends the testimony was outside the particular point in dispute. He argues it was extremely prejudicial to him.

### 2. The State's Contention

The State responds that the trial court did not err in allowing that portion of the testimony to be reread because deleting some of the testimony would have only created more confusion in the jury's mind.

### 3. Facts

During deliberation at the guilt/innocence phase of the trial, the jury sent the trial court a note stating, "We, the Jury, are in disagreement of who Latonya said was in the bathroom." After the trial court determined what portion of the witness's testimony to read to the jury, appellant objected:

[APPELLANT'S ATTORNEY]: Comes now defendant Randy Shawn Brown and objects to the proposed answer by the Court to the question propounded by the jury which asks essentially who the witness Latonya Williams said was in the bathroom prior to her being shot and before she passed out, words to that effect. The proposed answer to the question is broader than the question, it constitutes a general re-reading of the witness Latonya Williams' testimony.

Additionally, it emphasizes portions of her testimony that is highly prejudicial to this defendant which was not inquired about in the question and the answer as proposed by the Court would not only be prejudicial and deprive this defendant due process but would amount to a comment on the weight of the evidence by the Court.

The trial court overruled appellant's objection, stating:

I'll allow that. Any objection to it's overruled. I believe in the overall flow of this testimony, that's the only way the Court can respond without dissecting the testimony in some way that creates more problems than it cures. So we will read that to the jury if you'll bring them in, Mr. Bailiff.

The court reporter then read the following to the jury:

Q. And did Junior, Youngster and Covington come into the restroom?

A. Yes, sir.

Q. Did they come in with or without clothes?

A. Without clothes.

Q. What happened then?

A. A few minutes later Ken was calling Baby Face and asked him was he going

to shoot him, he can have everything he got, just let him go.

Q. Where were y'all when he was talking to Baby Face?

A. In the tub.

Q. All five of y'all were in the tub?

A. Yes.

Q. Was the water on or off?

A. On.

Q. Was it a shower or just a regular?

A. It was a regular bathtub.

Q. No shower?

A. No sir.

Q. Did this man, the one you called Baby Face, did he say anything to Covington?

A. He made a smart remark, I couldn't tell you what he had said at this moment. And the next thing you know he had shot Ken in the head.

Q. Shot Ken in the head. Did he in fact take his eye out?

A. Yes.

Q. After they shot Ken Covington in the head, what happened then? What's the next thing you recall?

A. I had looked down there at Ken and when I seen his head go down, Money Mike shot me in my arm, I had passed out.

Q. Where was Money Mike when he shot you?

A. He had like one foot out the bathroom and one in the hallway.

Q. So he was halfway in the restroom and halfway out?

A. Yes, sir.

Q. How many of the boys were in the restroom?

A. Just two.

Q. Two was in there and Money Mike was halfway in and halfway out?

A. Yes.

Q. So three boys were near the restroom?

A. Yes, sir.

Q. Where was the one that you knew as Baby Face, where was he?

A. Standing in front of the bathtub.

Q. Was he near the door too?

A. No, he was standing right in front of the bathtub.

The court reporter's notes on the reading of this portion of the testimony are not in the record. This Court may accept any statement made by appellant in his original brief about the facts or the record as correct unless challenged by the opposing party. TEX.R.APP.P. 74(f). The State does not challenge the statements made by appellant about the testimony the court reporter read to the jury. We accept as correct the statement made by appellant in his original brief. *See Bachus v. State*, 803 S.W.2d 402, 403 (Tex.App.—Dallas 1991, pet. ref'd).

### 4. Applicable Law

■ Article 36.28 of the Texas Code of Criminal Procedure provides:

> In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other....

TEX.CODE CRIM.PROC.ANN. art. 36.28 (Vernon 1981). When a jury requests that certain testimony be reread, a trial court must decide what portions of the testimony will answer the query and must limit the testimony accordingly. *See Iness v. State*, 606 S.W.2d 306, 314 (Tex.Crim.App.1980).

Appellant relies on *Pugh v. State*, 376 S.W.2d 760 (Tex.Crim.App.1964), as support for his argument that the reread testimony was excessive. In *Pugh*, the jury merely requested the date and time of the incident. After the court provided the date and time, the court on its own motion ordered all the testimony of the arresting officer read, none of which related to the time and date of the incident. The court held the trial court abused its discretion. *Pugh*, 376 S.W.2d at 761–62. Similarly, in *Swindell v. State*, 491 S.W.2d 400, 401 (Tex.Crim.App.1973), the appellant complained the court allowed the court reporter to read more of the testimony than that which answered the jury's question. The court rejected the appellant's complaint and stated:

Further, in light of the manner in which the testimony was developed, it would have been difficult for the court reporter to separate it as to certain time periods. We are not inclined to agree that an excessive amount of testimony was read back by the court reporter.

*Swindell,* 491 S.W.2d at 401.

### 5. Standard of Review

The decision of what testimony will answer the jury's inquiry is a matter for the trial court's discretion. *Iness v. State,* 606 S.W.2d at 314. We do not disturb the trial court's decision unless a clear abuse of discretion and harm is shown. *See Jones v. State,* 706 S.W.2d 664, 668 (Tex.Crim.App. 1986).

### 6. Application Of The Law To The Facts

█ We find that the reread portion of the witness's testimony did not exceed the scope of the jury's inquiry. The jury inquired about who the witness said was in the bathroom. The trial court allowed the court reporter to read back the portion of the testimony that related to who was in the bathroom. The testimony begins with the question, "And did Junior, Youngster and Covington come into the bathroom?"; and it ends with the response, "No, he was standing right in front of the bathtub." The remaining testimony relates to the conversations and actions of the people while they were in the bathroom. Although this testimony may have been prejudicial to appellant, the trial court did not abuse its discretion in allowing the court reporter to read it to the jury upon request.

The trial court stated, "I believe in the overall flow of this testimony, that's the only way the Court can respond without dissecting the testimony in some way that creates more problems than it cures." The trial court did not believe that the testimony could have been further limited and still accurately answer the jury's inquiries. Deleting some of that testimony would have only created more confusion in the jury's mind. We hold the trial court properly limited the testimony to the portion that was necessary to answer the jury's inquiry.

The trial court did not abuse its discretion. We overrule appellant's second point of error.

We affirm the trial court's judgment.

KAPLAN, J., dissents.

KAPLAN, Justice, dissenting.

I respectfully dissent. I would hold that the trial court abused its discretion in requiring the court reporter to read back more of Latonya Williams's testimony than was necessary to answer the jury's question.

Latonya testified that she and her cousin were visiting three male friends at an apartment. A group of young men entered the apartment and started to rob the occupants. Ken Covington, one of the occupants, recognized appellant and called him by name. Another robber ordered all five occupants to strip and to get into the bathtub. Some of the robbers also went into the bathroom, while others ransacked the apartment.

The jury sent a note stating, "[W]e ... are in disagreement of who Latonya said was in the bathroom." The trial court had the reporter reread over two pages of testimony that recapitulated appellant's shooting of Ken Covington. Appellant was not charged with shooting Covington. Rather, appellant was tried as a party to the murder of Juniores Ray Mahan. The trial court ordered the following testimony read back to the jury. I italicize those portions that do not respond to the jury's question:

Q. And did Junior [the complainant's nickname], Youngster and Covington [the three males whom Latonya and her cousin were visiting] come into the restroom?

A. Yes, sir.

*Q. Did they come in with or without clothes?*

*A. Without clothes.*

*Q. What happened then?*

*A. A few minutes later Ken was calling Baby Face and asked him was he going to shoot him, he can have everything he got, just let him go.*

Q. Where were y'all when he was talking to Baby Face?
A. In the tub.
Q. All five of y'all were in the tub?
A. Yes.
Q. Was the water on or off?
A. On.
Q. Was it a shower or just a regular?
A. It was a regular bathtub.
Q. No shower?
A. No sir.
Q. Did this man, the one you called Baby Face [appellant's nickname], did he say anything to Covington?
A. He made a smart remark, I couldn't tell you what he had said at this moment. And the next thing you know he had shot Ken in the head.
Q. Shot Ken in the head. Did he in fact take his eye out?
A. Yes.
Q. After they shot Ken Covington in the head, what happened then? What's the next thing you recall?
A. I had looked down there at Ken and when I seen his head go down, Money Mike shot me in my arm, I had passed out.
Q. Where was Money Mike when he shot you?
A. He had like one foot out the bathroom and one in the hallway.
Q. So he was halfway in the restroom and halfway out?
A. Yes, sir.
Q. How many of the boys were in the restroom?
A. Just two.
Q. Two was in there and Money Mike was halfway in and halfway out?
A. Yes.
Q. So three boys were near the restroom?
A. Yes, sir.
Q. Where was the one that you knew as Baby Face, where was he?
A. Standing in front of the bathtub.
Q. Was he near the door too?
A. No, he was standing right in front of the bathtub.

Appellant told the police that he started to leave the apartment after the robbery when he heard shots being fired. Latonya testified that all five victims were forced into the bathroom, while some of the robbers guarded them and others went through the apartment. In context, the jury's question was simple—did Latonya testify that appellant was one of the robbers who remained in the bathroom with the victims? The italicized portion of Latonya's testimony could easily have been excised, and the remainder would have sufficed to answer the jury's question. Instead, the jury once more heard damaging testimony graphically describing the shooting of another victim—a shooting that was not even the subject of the trial.

Article 36.28 of the Code of Criminal Procedure provides that "if the jury disagree as to the statement of any witness they may ... have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, *and no other ...*" TEX.CODE CRIM. PROC.ANN. art. 36.28 (Vernon 1981) (emphasis added). The majority correctly notes that the trial court has discretion in determining what testimony will answer the jury's inquiry. This formulation, however, does not mean that the trial court's decision is entirely beyond appellate review or that a trial court cannot abuse its discretion. *See Jones v. State,* 706 S.W.2d 664, 668 (Tex.Crim.App.1986).

The jury asked a simple question—which robbers remained in the bathroom with the victims? The trial court was obligated to interpret the jury's communication, determine what sections of the testimony would best answer the query, and limit the testimony accordingly. *See Iness v. State,* 606 S.W.2d 306, 314 (Tex.Crim.App.1980). The jury had before it appellant's exculpatory statement that he was leaving the apartment when he first heard gunshots. The jurors could not agree whether Latonya had testified that appellant was one of the robbers remaining in the bathroom when the shooting occurred. No more than the last five questions and answers in the quoted portion of Latonya's testimony would have sufficed to answer this question.

The majority points to the fact that the excerpted testimony begins with the statement that the three male robbery victims were in the bathroom. It concludes with the statement that appellant was standing in front of the bathtub. The majority then disingenuously states, "The remaining testimony relates to the conversations and actions of the people while they were in the bathroom." The jury merely wanted to know whether Latonya had affirmatively placed appellant in the bathroom when the shooting occurred. The trial court permitted the court reporter not only to read back Latonya's testimony placing appellant in the bathroom, but also permitted testimony about a shooting for which appellant was not even charged at trial. This testimony was some of the most damaging evidence presented by the State and far exceeded the scope of the jury's inquiry.

The majority acknowledges that "this testimony may have been prejudicial to appellant." I agree. The majority concludes that the trial court did not abuse its discretion in requiring the reporter to read back as much as he did. I do not agree.

I would reverse the trial court's judgment and remand the cause for new trial.