Randy Shawn BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 1087–92.

Court of Criminal Appeals of Texas, En Banc.

Jan. 26, 1994.

Douglas H. Parks, Dallas, for appellant.

John Vance, Dist. Atty., and Karen R. Wise, Keith Anderson and Fred Burns, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

A jury convicted Appellant of murder and assessed punishment at sixty-five years confinement. The conviction was affirmed. *Brown v. State*, 831 S.W.2d 847 (Tex.App.—Dallas 1992). We granted discretionary review to determine whether the trial court abused its discretion by answering a jury note in a manner which Appellant contends impermissibly exceeded the scope of the jury's inquiry. See Article 36.28, V.A.C.C.P.[1]

The evidence showed that cousins Latonya and Lizzie Williams were visiting three male friends, "Junior" Ray Mahan, Daryl Oudems, known as "Youngster," and Ken Covington, at Covington's apartment. While they were there four or five young men entered the apartment, and while in the course of robbing the occupants forced them to remove their clothing and get into the bathtub. After Covington called one of the assailants by his name, Appellant and at least one of the others started shooting. Lizzie Williams testified that she ducked under the others when the shooting started and was not hit by the gunfire. Covington was shot in the eye, Oudems was shot four times and Latonya Williams was shot eleven times. Covington, Oudems and Williams each survived—Mahan did not.

The testimony in question was that of Latonya Williams. She testified that while she and her cousin were at Covington's apartment five young men entered the apartment and proceeded to rob those present. She recognized one of the men known to her as "Money Mike." Covington recognized Appellant and referred to him as "Baby Face."[2]

She further summarized the events as follows: as soon as the men entered, one of them started striking Mahan with a pistol. The assailants took approximately seven hundred dollars and some jewelry. The men then instructed Williams and her cousin to take off their clothing and get into the bathtub. After the two women were in the bathroom, Covington, Mahan and Oudems came into the bathroom without their clothes. All five were in the bathtub and the water was running. A few minutes later Covington asked Appellant if he (Appellant) was going to shoot him. Covington said that Appellant could have everything he had, but to just "let him go." Williams testified Appellant shot Covington in the eye. Money Mike then shot Williams in the arm and she passed out. Neither Williams, nor any other witness, was able to say who shot Mahan.

Money Mike struck a plea bargain with the State and testified at trial. He testified that Appellant was the one who pistol-whipped Mahan. He testified further that Appellant was in the bathroom when the shooting occurred but that he (the witness) was outside the apartment.

During deliberations, the jury sent out a note which stated, "We, the jury, are in disagreement of who Latonya said was in the bathroom." In response the trial court had the court reporter read back the following testimony:

Q. And did Junior, Youngster and Covington come into the restroom?

A. Yes, sir.

Q. Did they come in with or without clothes?

---

1. Article 36.28, V.A.C.C.P., provides in pertinent part:

"In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such testimony or the particular point in dispute, and no other ..."

2. Covington did not testify at trial, as he was shot and killed in a subsequent incident apparently unrelated to this case.

A. Without clothes.

Q. What happened then?

A. A few minutes later Ken was calling Baby Face and asked him was he going to shoot him, he can have everything he got, just let him go.

Q. Where were y'all when he was talking to Baby Face?

A. In the tub.

Q. All five of y'all were in the tub?

A. Yes.

Q. Was the water on or off?

A. On.

Q. Was it a shower or just a regular?

A. It was a regular bathtub.

Q. No shower?

A. No sir.

Q. Did this man, the one you called Baby Face, did he say anything to Covington?

A. He made a smart remark, I couldn't tell you what he had said at this moment. And the next thing you know he had shot Ken in the head.

Q. Shot Ken in the head. Did he in fact take his eye out?

A. Yes.

Q. After they shot Ken Covington in the head, what happened then? What's the next thing you recall?

A. I had looked down there at Ken and when I seen his head go down, Money Mike shot me in my arm, I had passed out.

Q. Where was Money Mike when he shot you?

A. He had like one foot out the bathroom and one in the hallway.

Q. So he was halfway in the restroom and halfway out?

A. Yes, sir.

Q. How many boys were in the restroom?

A. Just two.

Q. Two was in there and Money Mike was halfway in and halfway out?

A. Yes.

Q. So three boys were near the restroom?

A. Yes, sir.

Q. Where was the one that you knew as Baby Face, where was he?

A. Standing in front of the bathtub.

Q. Was he near the door too?

A. No, he was standing right in front of the bathtub.

■ Appellant timely objected to the trial court's action and advised the judge that the "proposed answer by the Court ... is broader than the question, it constitutes a general re-reading of the witness Latonya William's [*sic*] testimony." Counsel further argued that the trial court's action "emphasizes portions of her testimony that is highly prejudicial to this defendant which was not inquired about in the question and the answer as proposed by the Court would not only be prejudicial and deprive this defendant due process but would amount to a comment on the evidence by the Court." In overruling Appellant's objection, the trial court stated "I believe in the overall flow of this testimony, that's the only way the Court can respond without dissecting the testimony in some way that creates more problems than it cures."

■ When the jury asks that certain disputed testimony be re-read, the trial court must first determine if the jury's inquiry is proper under Article 36.28, V.A.C.C.P. If it is proper, the trial court must then interpret the communication, decide what sections of the testimony will best answer the inquiry, then limit the re-reading accordingly. See *Iness v. State*, 606 S.W.2d 306, 314 (Tex.Cr. App.1980). We do not disturb the trial court's decision unless a clear abuse of discretion and harm is shown. *Jones v. State*, 706 S.W.2d 664, 668 (Tex.Cr.App.1986).

Appellant complains that the trial court allowed testimony which exceeded the scope of the jury's question and which was prejudicial to Appellant. Appellant contends the only point in dispute was whether he was in the bathroom at the time of the shooting and that this issue could have been answered by the court reporter re-reading only the last five questions and answers.

The Court of Appeals found that the "re-read portion of the witness's testimony did not exceed the scope of the jury's inquiry" and affirmed the trial court's ruling by stat-

ing that deleting some of the testimony would have only created more confusion in the jury's mind. *Brown,* 831 S.W.2d at 850–51.

Appellant cites *Pugh v. State,* 376 S.W.2d 760 (Tex.Cr.App.1964), as support for his argument that the re-read testimony was excessive. In *Pugh,* the jury sent out a note inquiring, "What was the date and hour the defendant was picked up by the Highway Patrolman?" The answer to that question was stipulated to and given to the jury. However, the court then recalled the jury on its own and, over objection, had portions of the officer's testimony re-read to the jury even though the testimony had no reference to the date or hour in dispute, but rather contained testimony regarding where the arrest took place and the steps the officer needed to take to effect the arrest. *Id.* at 761–762. This Court held that trial court's action was not authorized, bolstered the State's case, and was a clear abuse of discretion. *Id.* at 762.

The Court of Appeals properly distinguished *Pugh,* stating the jury's note in that case "merely requested the date and time of the incident." The jury's request in *Pugh* was so limited that a very precise answer was all that was necessary in response. The question in the instant case, however, was not so limited. The jury wanted to know who the witness said was in the bathroom. Despite appellant's contention, the jury did not simply ask whether appellant was in the bathroom, but instead wanted to know *everyone* who was in the bathroom. A re-reading of only the last five questions and answers would not have answered that question, because there were several more questions and answers during this witness's testimony regarding everyone who was in the bathroom. The Court of Appeals noted that the testimony the court reporter read back to the jury began with the question, "And did Junior, Youngster and Covington come into the bathroom?"; and it ends with the response, "No, he was standing right in front of the bathtub." The trial court correctly reasoned that the entire testimony between that first question and last response was necessary to be read to the jury in response to their question

because to excise intermediate portions of that testimony would have added more confusion rather than resolve the jury's question. Although the testimony re-read to the jury included questions and answers which did not directly show who was in the bathroom, this testimony did provide the context for the testimony which was directly on point, and some of the other testimony implied the presence of particular individuals. Compare *Duncan v. State,* 454 S.W.2d 736, 739–740 (Tex.Cr.App.1970). We hold that in this case, in the absence of any objection to the specific questions and answers appellant felt exceeded the bounds of the jury's request, the trial court did not abuse its discretion in re-reading the portion of testimony set out above.

The judgment of the Court of Appeals is affirmed.

MALONEY, Judge, dissenting.

Because the majority fails to apply the plain language of the controlling statute and this Court's previous holdings on the issue, I dissent.

Article 36.28 Tex.Code Crim.Proc.Ann. provides:

> In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, *and no other* . . . .

(emphasis added). Overlooking this article's unambiguous directive, the majority concludes the trial court did not abuse its discretion in re-reading portions of testimony unrelated to the jury's inquiry because it would have been impossible to excise those portions without leading to confusion. *Brown v. State,* 870 S.W.2d at 56 (Tex.Crim.App.1994). I cannot agree. I would first note that article 36.28 does not contain an exception for cases in which it would "confuse the jury" to excise portions of the testimony. Even if such an exception was permissible within the discretion of the trial court, it would not apply in this case because the testimony here could have been limited without leading to confusion.

The jury merely requested the names of the persons in the bathroom.[1] The testimony relating to whether the persons in the bathtub were clothed and relating to appellant's shooting of Covington was beyond the scope of the jury's request. The trial court could have answered the inquiry properly by deleting those portions beyond the scope of the query, leaving the following testimony:

Q. And did Junior, Youngster and Covington come into the restroom?

A. Yes, sir.

Q. All five of y'all were in the tub?

A. Yes.

Q. Where was Money Mike when he shot you?

A. He had like one foot out the bathroom and one in the hallway.

Q. So he was halfway in the restroom and halfway out?

A. Yes, sir.

Q. How many boys were in the restroom?

A. Just two.

Q. Two was in there and Money Mike was halfway in and halfway out?

A. Yes.

Q. So three boys were near the restroom?

A. Yes, sir.

Q. Where was the one that you knew as Baby Face, where was he?

A. Standing in front of the bathtub.

Q. Was he near the door too?

A. No, he was standing right in front of the bathtub.

This abbreviated version of Latonya Williams' testimony clearly reveals that the following persons were present in the bathroom: "Junior" Ray Mahan, "Youngster" Daryl Oudems, Ken Covington, Latonya Williams, "Money Mike," and "Baby Face" (appellant). The remainder of the questions and answers were unrelated to the jury's inquiry because they had nothing to do with who was present in the bathroom. Not only did the excessive testimony have nothing to do with the jury's inquiry, but the repeated references to appellant's shooting of Covington were particularly prejudicial:

Q. Did this man, the one you call Baby Face, did he say anything to Covington?

A. He made a smart remark, I couldn't tell you what he said at this moment. And the next thing you know *he had shot Ken in the head.*

Q. *Shot Ken in the head.* Did he in fact take his eye out?

A. Yes.

Q. After they *shot Ken Covington in the head,* what happened then? What's the next thing you recall?

(emphasis added). While I fail to see how deleting the excessive portions could have confused the jury, it is apparent to me that a re-reading of those portions could well have adversely influenced the jury during its deliberations. Since the objectionable questions could have been easily excised, failure to do so was error. *Pugh v. State,* 376 S.W.2d 760, 762 (Tex.Crim.App.1964); Tex. Code Crim.Proc.Ann. art. 36.28. The trial court abuses its discretion when it allows portions of testimony which are not related to the jury's inquiry to be read back. *See Iness v. State,* 606 S.W.2d 306, 314 (Tex. Crim.App.1980). For these reasons I dissent.

CLINTON, MILLER and BAIRD, JJ., join this dissent.

---

1. I agree with the majority that, contrary to appellant's contention, the jury did not simply ask whether appellant was in the bathroom, but wanted to know everyone who was in the bathroom. *Brown,* at 56.