Opinion filed October 3, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00270-CR

_____

## JUSTIN MILLER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 385th District Court

Midland County, Texas

Trial Court Cause No. CR36352

### M E M O R A N D U M   O P I N I O N

The jury found Justin Miller guilty of aggravated sexual assault of a child and assessed punishment at confinement for fifteen years and a $10,000 fine. The trial court sentenced Miller accordingly. We affirm.

Miller presents six issues for review. In his first and second issues, Miller argues that the trial court abused its discretion when it allowed the investigating detective and the sexual assault nurse examiner (SANE) to give an opinion as to the veracity of the complaining witness. Miller alleges in his third and fourth issues that the trial court erred when it restricted Miller's impeachment of the outcry witness regarding a prior inconsistent statement that she had made to the investigating detective and when it denied his motion for new trial based on the same ground. In his fifth and sixth issues, Miller asserts that the trial court abused its discretion when it submitted an overly broad response to a note from the jury and when it denied his motion for new trial based on the same alleged error. Miller does not challenge the sufficiency of the evidence.

The complaining witness, R.R., is Miller's eight-year-old half sister. Jackie R. is the mother of R.R. and Miller. Miller was adopted by Gayle and Thomas Miller when he was one week old. Miller and his birth mother, Jackie, made contact with one another and arranged to meet for the first time at the Millers' home. The Millers and Jackie's family spent the day together, and after dinner, R.R. and Miller went to Miller's room to play darts and video games. L.M. (Miller's sister) and T.R. (R.R.'s brother) played in L.M.'s room. R.R. testified that, while they were lying on Miller's bed playing the D.S. (a handheld gaming system), Miller rubbed the inside of her private with his finger. She told him to stop because it hurt. He stopped for a few minutes and then started touching her again. R.R. told him she had to go to the bathroom. She got up and went to the restroom, but she could not go to the bathroom because it hurt too badly. R.R. went to her mother, Jackie, and told her that she needed to talk to her in the restroom. Jackie went with her to the restroom, and R.R. told her what had happened.

Jackie testified that R.R.'s vagina was red and raw. She told her husband and Gayle what R.R. told her had happened. Jackie and Gayle confronted Miller with the allegation, and Miller denied touching R.R. in any inappropriate way. Jackie's family left the Millers' home and went on vacation. Several weeks after returning home from vacation, Jackie contacted the police and reported the incident. Miller was subsequently charged with aggravated sexual assault of a child.

We will first address Miller's contention that the trial court allowed the investigating detective and the SANE nurse to give an opinion as to R.R.'s veracity. On appeal, Miller complains that Bill Anderson, the investigating detective, directly commented on the complainant's credibility when he testified as to why he believed the forensic interview was true. Defense counsel called Detective Anderson to testify and the following exchange occurred:

> Q. And then you accepted the CAC interview as far as what the child said as being true; is that correct?
>
> A. That's correct.

During the State's cross-examination, the prosecutor asked, "Also, [defense counsel] asked you on direct, did you believe the CAC was true, and you stated yes. Why did you believe the CAC interview was true?" Defense counsel objected and made the following argument: "This is speculation. I asked him if he assumed that it was true, not whether it was true, to show the witness's -- this witness's state of mind and the way he conducted the investigation, not his opinion, so I object." The trial court overruled the objection, and Detective Anderson answered, "You look at the demeanor, how the child answers a question, body language and things like that. And that's what helps us believe in the truth of the matter with a child during the interview."

During redirect by defense counsel, the following exchange occurred:

> Q. Now, you've testified to the ladies and gentlemen of the jury that you watched this CAC video and you found her to be credible; is that correct?
>
> A. That's correct.

A witness's direct opinion on the truthfulness of another witness is inadmissible. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount v. State*, 872 S.W.2d 706, 711–12 (Tex. Crim. App. 1993) (op. on reh'g); *Arzaga v. State*, 86 S.W.3d 767, 776 (Tex. App.—El Paso 2002, no pet.). Here, however, Detective Anderson did not directly comment on R.R.'s truthfulness in response to the prosecutor's question. Instead, Detective Anderson listed factors that he relied on to determine the truthfulness of *a* child during an interview. He did not state specifically what he looked for when he reviewed R.R.'s CAC interview, nor did he testify as to what his conclusions were regarding R.R. The only time Detective Anderson testified as to whether R.R.'s interview was true or credible was when he agreed with defense counsel that he accepted the interview as true and when he agreed with defense counsel that he found R.R. to be credible. Because Detective Anderson did not directly comment on R.R.'s truthfulness in response to the prosecutor's question, the trial court did not err. We overrule Miller's first issue.

Miller also complains that Araceli Desmarais, the SANE nurse, directly commented on the complainant's credibility when she testified that, based on her exam and the history given by R.R., her impression was sexual abuse with normal findings. Specifically, Miller contends that this testimony, along with Desmarais's recount of the statements R.R. made to her during the exam, was an improper attempt to bolster R.R.'s unimpeached, prior consistent testimony.

4

Defense counsel made numerous objections throughout Desmarais's testimony. The following exchange took place before the trial court regarding Desmarais's findings:

> Q. (BY [PROSECUTOR]) Based upon your examination, the history given to you by [R.R.], what were your findings?
>
> [DEFENSE COUNSEL]: Once again -- and to the extent that she's going to testify as to any conclusion about a sexual a [sic] assault, I will object. And I don't know the answer, but I want to preserve my objection, your Honor.
>
> THE COURT: That's overruled.
>
> Q. (BY [PROSECUTOR]) You may answer.
>
> A. My impression was sexual abuse with normal genital and anal exam.

The trial court sustained defense counsel's objection to the State's prior question that asked whether the exam confirmed that a sexual assault took place. As to that question, defense counsel objected on the grounds that it called for a legal conclusion, presupposed facts that Desmarais had no personal knowledge of, and was beyond the scope of Desmarais's expertise. Defense counsel also objected to Desmarais testifying as to the statements R.R. made to her during the exam on the grounds that the State had not laid the proper predicate for the medical diagnosis exception to the hearsay rule because the State had not shown that R.R. was aware of the importance of telling the truth during the exam.

Although defense counsel objected to Desmarais's testimony on numerous occasions, none of the grounds stated were for improper bolstering, commenting on the credibility of the complainant, or giving an opinion as to the veracity of the complainant. Because Miller's contentions on appeal do not comport with his objections at trial, he has not preserved error for appellate review. TEX. R.

5

APP. P. 33.1; *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). Miller's second issue is overruled.

In his third and fourth issues, Miller contends that the trial court erred when it restricted Miller's impeachment of Jackie by not admitting extrinsic evidence of a prior inconsistent statement that Jackie had made to Detective Anderson. Jackie testified at trial that the first thing R.R. told her in the bathroom was, "Mommy, Justin hurt me." Defense counsel asked Jackie whether she had told Detective Anderson that the first thing R.R. said to her in the bathroom was that her tee-tee hurt and burned. Jackie did not deny making the statement to Detective Anderson. She testified that she did not recall the sequence in which she made the statements to Detective Anderson and admitted that she may have told Detective Anderson the statements out of order from the order in which R.R. said them to her.

Miller argues that, because Jackie denied making the statement to Detective Anderson, defense counsel was permitted to ask Detective Anderson about the out-of-court statement. However, while the jury was present, defense counsel never asked Detective Anderson whether Jackie made the statement, and the trial court, therefore, never ruled on its admissibility. Miller only asked Detective Anderson about the statement during a bill made outside the presence of the jury. Defense counsel did move to admit the excerpt of the statement during his examination of Jackie. The trial court sustained the State's objection on the ground that Jackie admitted making the statement. Because Jackie did not deny making the statement, extrinsic evidence of the statement was inadmissible. *See* TEX. R. EVID. 613(a). The trial court did not err when it restricted Miller's impeachment of Jackie regarding the prior inconsistent statement. Because the trial court did not err when it restricted Miller's impeachment, the trial court also

6

did not err when it denied Miller's motion for new trial based on this ground of alleged error. Miller's third and fourth issues are overruled.

Miller argues in his fifth and sixth issues that the trial court erred when it submitted an overly broad response to a note from the jury. Article 36.28 of the Texas Code of Criminal Procedure provides in part that "if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other." TEX. CODE CRIM. PROC. ANN. art. 36.28 (West 2006). If the trial court determines that the jury's request is proper under Article 36.28, the trial court must then interpret the request and decide which portions of the testimony will best answer the request. *Brown v. State*, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994). We will not disturb a trial judge's decision under Article 36.28 unless a clear abuse of discretion and harm are shown. *Id.*

During deliberations, the foreman of the jury sent the following note to the court: "We would like to have the following testimony read back to us: When [defense counsel] asked [R.R.] about 'I have told you everything my mommy told me to tell you.' We are in disagreement about this." The State objected to the trial court reading back only the question and answer relating to the issue from defense counsel's examination of R.R. and requested that the State's questions to R.R. on the same issue be included in the testimony provided to the jury. The trial court initially agreed with Miller and ruled that only the question and answer from defense counsel's examination would be read to the jury. The trial court then brought the jury into the courtroom, and the following exchange occurred:

> THE COURT: You sent a note out and you -- do you have that note with you or is it back in the jury room?

> PRESIDING JUROR: I left it in the room.

THE COURT: That's all right.  I believe the note was -- it was in quotes, the question that you had a disagreement about.  And the question was when --

PRESIDING JUROR: Yes, that line of questioning.

THE COURT: -- [defense counsel] asked [R.R.] if her -- if she told the -- if her mama told her what to say.  Is that what you've got a disagreement with?

PRESIDING JUROR: Yes.

THE COURT: Okay.  And nothing else about her testimony on that, but just that one -- on that interview, nothing else about her testimony on the interview is in disagreement?

PRESIDING JUROR: Not -- not as --

THE COURT: But this is what you wanted, right?

PRESIDING JUROR: Yes, sir.

[PROSECUTOR]: Your Honor, may we approach?

THE COURT: Yes, ma'am.

(AT BENCH, ON THE RECORD)

[PROSECUTOR]: I don't believe that it's just in a disagreement.  He just said a line of questioning pertaining to that.  That's what he said twice.

[DEFENSE COUNSEL]: He said it.

THE COURT: I'm going to get Monica to read it.

(OPEN COURT, JURY PRESENT)

THE COURT: Monica, read [the presiding juror's] statement back to me.

8

(Requested portion read)

THE COURT: His answer was, "That line of questioning."

Is it that line of questioning, [presiding juror]?

PRESIDING JUROR: Yes, sir.

The State again moved to have the line of questioning from both defense counsel's and the State's examination of R.R. read back to the jury. The trial court changed its ruling and read the testimony of the witness on the disputed issue from both examinations.

Miller argues that including R.R.'s testimony from the State's redirect was outside the scope of the jury's request and was an improper comment on the evidence. We do not agree. Although the presiding juror initially stated that the jurors were in disagreement about defense counsel's question regarding "I have told you everything my mommy told me to tell you," the presiding juror responded to the court's inquiry that the jurors were in disagreement about the "line of questioning." The trial court could have interpreted that statement to mean that the jury was in disagreement as to the entire testimony regarding whether R.R. told the counselor what her mother told her to say. *See, e.g.*, *Iness v. State*, 606 S.W.2d 306, 314 (Tex. Crim. App. 1980) (holding trial court did not abuse its discretion when it interpreted the sentence "we are in disagreement concerning this matter" as an expression of disagreement concerning the entire testimony relating to penetration even when the first part of jury's request specifically asked about the prosecutor's questions to witness).

We hold that the trial court did not abuse its discretion when it read R.R.'s entire testimony pertaining to whether she told the counselor what her mother told her to say. Because the trial court did not err when it read the entire testimony

back to the jury, the trial court also did not err when it denied Miller's motion for new trial based on this ground of alleged error. Miller's fifth and sixth issues are overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


October 3, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.