**Opinion issued June 28, 2016**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-15-00726-CR

———————————

**KENTRELL MAURICE BUTLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1390406**

---

## MEMORANDUM OPINION

A jury convicted appellant, Kentrell Maurice Butler, of aggravated robbery with a deadly weapon and assessed his punishment at fourteen years' confinement. In two points of error, appellant contends that (1) the trial court erred when it overruled his objection to having a portion of the testimony read back to the jury,

and (2) the evidence was factually insufficient to support his conviction for the charged offense. We affirm.

## Background

Umaid Jawani, the complainant, owns a novelty smoke and gift shop in Humble, Texas. On the morning of November 8, 2012, Jawani arrived at his shop and cleaned the glass showcases displaying merchandise as he did every morning before opening at 9:00 a.m. Shortly thereafter, two black men wearing hoodies entered the store and bought some cigarette paper. The men wore the hoods pulled over their heads which struck Jawani as peculiar because the weather was warm that day. Concerned that he was going to be robbed, Jawani watched as the two men walked outside, turned around, and ran back to the shop.

Once inside, the man wearing the black hoodie pointed a large black gun at Jawani and demanded that Jawani tell them how to open the cash register, while the man in the red hoodie jumped over the counter and took approximately $200 from the register. One of the men broke the glass on top of one of the showcases and grabbed some of the expensive pipes. Afterwards, the men instructed Jawani to lay on the ground behind the counter. After the men left the store, the man in the red hoodie returned and grabbed a small gun from one of the showcases and ran out of the store. Jawani testified that he was unable to identify the robbers.

When Deputy Smith with the Harris County Constable's Office arrived at the scene, he tested the counter for fingerprints and collected blood samples found on the counter and on a green pipe. Dimitry Payavla, a latent print examiner with the Harris County Sheriff's Office, testified that one of the fingerprints lifted from the counter belonged to appellant, and that the impression left by appellant's fingerprint on the counter revealed that it had been made with more pressure than the other fingerprints. Wendi Phelps, the technical operations manager of the forensic genetics lab at the Harris County Institute of Forensic Sciences, tested the blood samples taken from the showcase counter and the green glass pipe. Phelps testified that the DNA from those two samples was consistent with appellant's DNA profile obtained from his buccal swabs.

During its deliberations, the jury sent out several questions to the trial court. In one of them, the jury stated, "[w]e would like to review the officer's testimony of the collection of the blood from the countertop." The court responded with the following written message:

Ladies and Gentlemen:

The Texas Code of Criminal Procedure specifically dictates the procedure the Court must follow in reading testimony back to the jury. It provides:

"If the jury disagrees as to the statement of any witness, they may, upon applying to the Court, have read to them from the court reporter's notes that part of such witness's testimony or the particular point in dispute, and no other."

3

In other words, the Court cannot have the entire testimony of a witness read back; your request must be **specific** as **the point in dispute**.

With these instructions in mind, if you would like certain testimony read back to you, please specify your point in dispute, as well as the name of the witness whose statement is in dispute and the lawyer questioning the witness at the time of the statement.

Using the form provided by the court, the jury responded as follows:

Name of witness: Constable Smith

Lawyer questioning witness: Mosely [sic] – Prosecutor

Point or statement in dispute Constable was asked or spoke about the condition and collection of the blood sample, how easy or simple was to collect (Relative Dryness)

The trial court then told counsel that the court reporter had pulled up the portion of Deputy's Smith's testimony responsive to the request, which read as follows:

Q: Why did you collect the green glass object?

A: Because it had a blood drop on it.

Q: The blood that you observed in the store that morning or early afternoon I guess by the time you got there?

A: M-h'm.

Q: Did it appear to be blood that was dried up and had been there awhile?

A: Just – not a long time, just a little dry but not too dry.

4

Q: Okay, Did you have any difficulty collecting it?

A: No.

Defense counsel objected to the quoted portion of testimony on the grounds that the jury's request was not specific and there was no question tying the parenthetical comment about relative dryness to the question regarding how easy it was to collect the blood sample. Trial counsel requested that the trial court provide only the last two lines of the testimony to the jury. The trial court overruled the objection, stating that it believed that the entirety of the quoted testimony was responsive to the question. The above-quoted testimony was then read back to the jury.

The jury subsequently found appellant guilty of aggravated robbery with a deadly weapon and assessed his punishment at fourteen years' confinement. This appeal followed.

### Jury's Request for Testimony

In his first point of error, appellant contends that the trial court erred when it overruled his objection to providing the jury with the portion of Deputy Smith's testimony regarding the dryness of the blood sample. Instead, he argues, the trial court should have read back the portion of testimony responsive to the only question the jury asked, i.e., whether the blood sample was difficult to collect.

**A. Standard of Review and Applicable Law**

Code of Criminal Procedure article 36.28 provides that "if the jury disagree[s] as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.28 (West 2006); *see Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005) ("This statute seeks to balance our concern that the trial court not comment on the evidence with the need to provide the jury with the means to resolve any factual disputes it may have."). After determining that the jurors dispute a portion of testimony, the trial court must "strike a balance between reading too much or too little testimony in response to the jury's request." *Arnold v. State*, 234 S.W.3d 664, 676 (Tex. App.—Houston [14th Dist.] 2007, no pet.). When such a circumstance arises, the trial court must interpret the communication, decide what portion of the testimony best answers the question, and limit the testimony accordingly. *Brown v. State*, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994) (en banc). Furthermore, the manner and extent of its response cannot be held wrong unless the trial court abused its discretion. *Id.*

**B.    Analysis**

Here, in response to the jury's question that it be allowed to review Deputy Smith's testimony about the collection of blood from the countertop, the trial court

6

instructed the jury that testimony could only be read back if the jury made a request that included the specific point in dispute in its deliberations. In response, the jury narrowed its request to "the condition and collection of the blood sample, how easy or simple [it] was to collect (Relative Dryness)." In response, the court reporter read the following testimony back to the jury:

Q: Why did you collect the green glass object?

A: Because it had a blood drop on it.

Q: The blood that you observed in the store that morning or early afternoon I guess by the time you got there?

A: M-h'm.

Q: Did it appear to be blood that was dried up and had been there awhile?

A: Just – not a long time, just a little dry but not too dry.

Q: Okay, Did you have any difficulty collecting it?

A: No.

The jury's request asked about both the condition of the blood and its collection. The reread portion of Deputy Smith's testimony was responsive to the specific request by the jury and did not exceed the scope of the jury's inquiry. *See Brown*, 870 S.W2d at 56 (concluding that court of appeals properly concluded that trial court's reread to jury did not exceed scope of jury's inquiry in murder trial, and that testimony could not have been further limited and still accurately answered

7

jury's inquiries); *see also Rice v. State*, No. 05-08-00722-CR, 2009 WL 3647397, at *3 (Tex. App.—Dallas 2009, no pet.) (mem. op., not designated for publication) (concluding that trial court did not abuse its discretion in providing jury with excerpted portion of witnesses' testimony which answered three questions asked by jury because questions were asked together and concerned same portion of witness's testimony). Because the trial court did not abuse its discretion, we overrule appellant's first point of error.

## Sufficiency of the Evidence

In his second point of error, appellant contends that the evidence is factually insufficient to support the jury's verdict that he is guilty of aggravated robbery with a deadly weapon. Specifically, he argues that the evidence failed to prove beyond a reasonable doubt the elements of identity and intent of the charged offense.

### A. Standard of Review and Applicable Law

We now review the factual sufficiency of the evidence in criminal cases using a legal sufficiency standard of review. *See Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Thus, we review appellant's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979). We examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.

8

*Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789.  Because the jury is the sole judge of the credibility of the witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc).

A person commits aggravated robbery if, in the course of committing theft and with intent to obtain or maintain control of property, the person intentionally or knowingly threatens or places another in fear of imminent bodily injury and uses or exhibits a deadly weapon.  TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (West 2014).  "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both."  *Id*. § 7.01.  "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ."  *Id*. § 7.02(a)(2).

## B. Analysis

Appellant contends that the evidence is insufficient to uphold the jury's guilty verdict because (1) Jawani was unable to identify appellant as one of the two men who robbed him; (2) evidence that one of the fingerprints from the countertop in Jawani's shop belonged to appellant did not indicate when the print was made and

9

did not show intent; and (3) evidence that appellant's DNA profile matched the DNA found on the glass pipe and showcase countertop did not establish intent.

Here, the jury heard evidence that two men entered Jawani's shop, that the man in the black hoodie pointed a gun at Jawani while the man in the red hoodie jumped over the counter, and that they demanded that Jawani tell them how to open the cash register. The evidence further showed that the man in the red hoodie took approximately $200 from the register while the man in the black hoodie continued to point the gun at Jawani, and that the men smashed a glass showcase to take some of the expensive pipes and a gun that were on display. Jawani also testified that they told him to empty his pockets and give them his cell phone. This is sufficient evidence from which the jury could have concluded that the two men intended to rob Jawani's store. *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789.

With regard to the element of identity, we note that "[e]vidence as to the identity of the perpetrator of an offense can be proved by direct or circumstantial evidence and does not need to be proven by eyewitness identification." *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). Here, Jawani testified that he cleaned the glass showcase counters in his shop every morning before opening, and that he knew the blood had not been on the countertop before the two men entered his store that morning. He further testified that the robbers smashed one of the glass showcases to take several of the pipes on display. Payavla, the fingerprint examiner,

10

testified that one of the fingerprints lifted from the counter belonged to appellant, and that the impression left by appellant's fingerprint on the counter revealed that more pressure had been applied when it was made than other fingerprints found. Deputy Smith testified that the blood found on the counter had not yet dried, indicating that it had not been on the counter long before it was collected. Phelps, who tested the blood samples found on the counter and the green glass pipe, testified that the DNA from those two samples was consistent with appellant's DNA profile obtained from his buccal swabs. The jury could have rationally inferred from this evidence that appellant cut himself when taking merchandise during the robbery which is why the blood had not yet dried when officers arrived at the scene. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to support the jury's finding that appellant committed aggravated robbery with a deadly weapon. *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789. We overrule appellant's second point of error.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).